UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE HARP, | ) | Civ. 11-4149-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SECRETARY OF CORRECTIONS, (D.O.C), Individually and in his official capacity; | ) ) ) | |
| SOUTH DAKOTA PRISON MEDICAL DEPARTMENT STAFF, Individually and in their official capacity; | ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY |
| ROBERT DOOLEY, Warden Mike Durfee State Prison, individually and in official capacity; | ) ) ) | JUDGMENT AND DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL |
| DR. EUGENE REGIER, Under contract to South Dakota Department of Health, Individually and his official capacity; | ) ) ) ) | |
| DR. MELVIN WALLINGA, Under contract to South Dakota Department of Health, Individually and his official capacity; | ) ) ) ) | |
| DOUGLAS WEBER, Warden of The South Dakota State Penitentiary, individually and In his official capacity; and | ) ) ) ) | |
| KEITH DITMANSON, D-Unit Manager South Dakota State of South Dakota Penitentiary, Jameson Annex, Individually and in his Official capacity, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, George Harp, is an inmate at Mike Durfee State Prison (MDSP) in Springfield, South Dakota.[1] On October 18, 2011, and again on January 3, 2012, plaintiff filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants subjected him to cruel and unusual conditions, failed to protect him from violence, and acted with deliberate indifference toward his serious medical needs, all in violation of the Eighth Amendment. Docket 1, 7.

The court screened Harp's complaint pursuant to 28 U.S.C. § 1915 and dismissed one of his three claims for failure to exhaust administrative remedies. Docket 10. In response to defendants' first motion for summary judgment (Docket 43), the court dismissed Harp's excessive force claims for failure to exhaust administrative remedies (Docket 56). Defendants now move for summary judgment on Harp's remaining claims regarding defendants' alleged deliberate indifference toward his serious medical needs. Docket 60. Defendants assert that each is entitled to sovereign immunity and qualified immunity. Docket 61. Harp opposes defendants' motion for summary judgment. Docket 63. Harp asserts that further discovery would reveal that defendants are providing incomplete and fabricated information with respect to Harp's medical condition and treatment. *Id.* For the reasons set forth

---

[1] Harp was transferred from MDSP to the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota, on October 20, 2011. Docket 4. On January 22, 2013, the court received notice that Harp had returned to MDSP. Docket 55. At issue in this case are claims against both institutions.

2

herein, the court grants defendants' motion for summary judgment (Docket 60).

## FACTUAL BACKGROUND

In the light most favorable to Harp, the facts are as follows:

Harp is an inmate in the custody of the South Dakota Department of Corrections (DOC). Docket 62 at ¶ 1. Harp has been incarcerated at both MDSP and SDSP. Docket 62 at ¶ 1. At issue in this case is alleged conduct that occurred at both facilities. Prior to being incarcerated, Harp had been treated for "stroke, AAA, deep vein thrombosis, ruptured disc (L4-S5), [and] chronic back pain." Docket 1 at 1; Docket 62 at ¶ 14. According to Harp, defendants Dr. Regier, Dr. Wallinga, and Unit Manager Ditmanson, in accordance with DOC policy,[2] refused him access to medications related to the aforementioned conditions and thus violated the Eighth Amendment by acting with deliberate indifference toward his serious medical needs. Docket 7 at 6.

More specifically, Harp alleges that Dr. Wallinga initially refused "to allow [Harp] to receive medications that had been prescribed by outside physicians." Docket 36 at 3. Harp concedes, however, that Dr. Wallinga "later did prescribe some for [Harp]." *Id.* at 4. With regard to Dr. Regier, Harp alleges that Dr. Regier "denied [Harp] medications prescribed to [Harp] by the physicians at . . . Sanford Hospital and the physicians at Avera MeKennon

---

[2] In his opposition brief, Harp asserts that defendants "consistently" told him that "D.O.C. policy prevents adequate treatment." Docket 63 at 3. Harp, however, has been unable to obtain a copy of such policy. *Id.*

[sic] Hospital." *Id.* According to Harp, Dr. Regier discontinued various medications without first examining Harp. *Id.*; Docket 63 at 3. "This left [Harp] in excruciating pain and the sudden discontinuation of the medications created a serious risk of stroke and death to [Harp]." Docket 36 at 4–5. Moreover, Dr. Regier allegedly "prevented [Harp] from the follow up appointments with the specialists that have treated [Harp]" by refusing to schedule such appointments. *Id.* at 5. Finally, Harp alleges that Unit Manager Ditmanson denied Harp medically necessary diabetic socks, even despite being told by Nurse Jessica that doctors ordered diabetic socks for Harp. Docket 7 at 6; Docket 36 at 4. According to Harp, Ditmanson cited the cost of diabetic socks when denying such provisions. *Id.*

In his amended complaint, Harp accuses the Secretary of Corrections, the South Dakota Prison Medical Staff, Warden Robert Dooley, and Warden Douglas Weber of acting with deliberate indifference toward his serious medical needs. Docket 36 at 4. With regard to the Secretary of Corrections and Warden Dooley, Harp alleges that each defendant acted with deliberate indifference to his serious medical needs "by creating policy and procedure that interferes with and denies needed medications and medical treatment," thus subjecting Harp to serious health risks. *Id.* With respect to Warden Weber, Harp alleges that he acted with deliberate indifference to Harp's serious medical needs by authorizing, pursuant to an Operations Memorandum, Unit Manager Ditmanson's denial of diabetic socks. *Id.*

4

According to Harp, this action was taken in contravention of Weber's duty to ensure that inmates at SDSP are provided with prescribed medical treatment and medications. *Id.* at 2. Finally, with regard to the South Dakota State Prison Medical Department Staff, Harp alleges that the staff "denied medications to [Harp] that were prescribed by a physician on more than one occasion," a denial that "caused great pain and created a serious risk to [Harp]'s health." *Id.* at 4.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence,[3] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although

---

[3] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

"the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations," *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

**DISCUSSION**

Defendants assert that Harp's remaining claims must be dismissed based on the doctrines of sovereign immunity and qualified immunity. Docket 60; Docket 61. Defendants do not deny that Drs. Regier and Wallinga refused Harp certain medications. Docket 61 at 4; Docket 61-1 at ¶¶ 5, 9; Docket 61-2 at ¶¶ 6, 9. Instead, they assert that those determinations were based on each doctor's professional judgment. Docket 61 at 3–6; Docket 61-1 at ¶¶ 5–6; Docket 61-2 at ¶¶ 6–7; Docket 62 at ¶¶ 18–19. Similarly, defendants do not deny that Unit Manager Ditmanson refused Harp diabetic socks but rather assert that Ditmanson issued the refusal because the relevant medical order had expired. Docket 61 at 6–8; Docket 61-3 at ¶¶ 6–8; Docket 62 at ¶21. Finally, because the denials of medications and diabetic socks were neither based on SDDOC policy nor authorized by prison officials, defendants assert that the Secretary of Corrections, Warden Robert Dooley, Warden Douglas Weber, and the South Dakota Prison Medical Staff cannot be found to have acted with deliberate indifference toward Harp's serious medical needs. Docket 61 at 8–11. Accordingly, defendants assert that each is entitled to summary judgment as a matter of law. *Id.*

**I. Defendants, in Their Official Capacities, Are Entitled to Summary Judgment Under the Doctrine of Sovereign Immunity.**

Harp has sued defendants in their official capacities. As the United States Supreme Court has held, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the

official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, it is a suit against the State. Although "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." *Id.* at 66. "The Eleventh Amendment bars such suits unless the State has waived its immunity," *id.* (citing *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472–73 (1987)), and as defendants have noted, the State has not waived its immunity in this case, (Docket 61 at 11). Accordingly, insofar as Harp seeks to hold defendants liable for violations committed while acting in their official capacities, the court finds that defendants are protected by the doctrine of sovereign immunity and are thus entitled to summary judgment as a matter of law.

## II. Defendants, in Their Individual Capacities, Are Entitled to Summary Judgment Under the Doctrine of Qualified Immunity.

With respect to Harp's § 1983 action against the defendants in their individual capacities, qualified immunity will function to protect from liability those defendants whose actions were objectively reasonable in light of clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (" 'The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' " (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991))). To determine whether qualified immunity is appropriate, the court considers "(1) whether the

facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the answer [to whether a constitutional right was violated] is no, [the court will] grant qualified immunity," and enter summary judgment in favor of defendants. *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006).

Remaining at issue in this case is Harp's claim that each of the defendants, in their individual capacities, acted with deliberate indifference toward his serious medical needs. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately

9

disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). The court will separately address each component of Harp's deliberate indifference claim.

### A. Harp has established the existence of a serious medical need.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784. The Eighth Circuit has determined that the following circumstances exhibit a serious medical condition: a pregnant inmate who is bleeding and passing blood clots, *see Pool v. Sebastian Cnty., Ark.*, 418 F.3d 934, 945 (8th Cir. 2005); an inmate who is complaining of extreme tooth pain and presenting with swollen, bleeding gums, *see Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); and a diabetic inmate who is experiencing excessive urination, diarrhea, sweating, weight loss, and dehydration, *see Roberson v. Bradshaw*, 198 F.3d 645, 647–48 (8th Cir. 1999). *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

The court will assume that Harp established the existence of a serious medical need. Excerpts from Harp's medical records establish that Harp's medical conditions, which include but are not limited to Hepatitis C, degenerative arthritis, ruptured vertebral discs, and chronic widespread pain, require treatment. Docket 61-4; Docket 62 at ¶ 14. Moreover, defendants have not disputed the existence of a serious medical condition. Docket 61; Docket

62. Accordingly, the court finds that Harp has satisfied the objective component of his deliberate indifference claim.

>    **B.     Harp has not established deliberate indifference to his serious medical needs.**

To be liable for deliberately disregarding a serious medical need, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, " 'the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.' " *Coleman*, 114 F.3d at 785 (citing *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)).

"[T]his does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). "The plaintiff-inmate must clear a substantial evidentiary threshold to show the [defendants] deliberately disregarded the inmate's needs by administering an

inadequate treatment." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citation omitted). To determine whether defendants are entitled to summary judgment, the court will assess the conduct of each defendant.

> **1. Dr. Melvin Wallinga and Dr. Eugene Regier did not act with deliberate indifference toward Harp's serious medical needs, but instead exercised independent medical judgment in treating Harp's medical needs.**

Dr. Wallinga contends that he did not act with deliberate indifference toward Harp's serious medical needs. Rather, Dr. Wallinga "exercised [his] independent medical judgment" in prescribing treatment for Harp. Docket 61-1 at ¶ 5. Dr. Wallinga further asserts that he chose "a course of treatment based upon [his] experience and education, taking into consideration Inmate Harp's medical history, past narcotic use, and current circumstances." *Id.* Dr. Wallinga's medical determinations were not restricted by DOC policy; in fact, Dr. Wallinga is "not aware of any policy, official or unofficial, within the South Dakota Department of Corrections which restricts [his] professional judgment regarding the prescription of medications." *Id.* at ¶ 6. Dr. Wallinga concedes that he discontinued Harp's medications on January 25, 2011, but only after Harp specifically requested the discontinuation. *Id.* at ¶ 8. Dr. Wallinga prescribed Harp new pain medications on March 17, 2011, when Harp requested that "several of his medications be re-prescribed." *Id.* at ¶ 9.

Dr. Regier similarly asserts that he did not act with deliberate indifference toward Harp's serious medical needs. Rather, "[i]n prescribing

treatment for Inmate Harp, [he] . . . exercised [his] independent medical judgment." Docket 61-2 at ¶ 6. Dr. Regier was "not . . . restricted by the policies of the South Dakota Department of Corrections regarding which medications [he] . . . prescribe[d]." *Id.* As with Dr. Wallinga, Dr. Regier is "not aware of any policy, official or unofficial, within the South Dakota Department of Corrections which restricts [his] professional judgment regarding the prescription of medications." *Id.* at ¶ 7. Based on his knowledge of Harp's past narcotic use and dependency on pain medications, Dr. Regier prescribed medications which were "as effective but less addictive than the narcotics sought by Inmate Harp." *Id.* at ¶¶ 8–9. Finally, in response to Harp's allegation that Dr. Regier prevented Harp from receiving follow-up appointments with specialists, Dr. Regier asserts that, in accordance with protocol, he ordered the medical staff to request the consultation of specialists when such consults were necessary. *Id.* at ¶ 10–12. Furthermore, Dr. Regier "maintained correspondence with those specialists in order to continue to provide proper care." *Id.* at ¶ 12.

The Eighth Circuit has held that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany*, 132 F.3d at 1239. Accordingly, " 'a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the

13

level of a constitutional violation.' " *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany*, 132 F.3d at 1240.

Beyond mere assertions, Harp has not provided evidence to refute the information set forth in the affidavits of Drs. Wallinga and Regier. The court therefore cannot conclude that Drs. Wallinga and Regier acted with deliberate indifference toward Harp's serious medical needs. The record demonstrates that Dr. Wallinga only discontinued Harp's pain medications when Harp requested such discontinuance. Docket 61-1 at ¶ 8. When Harp requested he be put back on pain medications, Dr. Wallinga complied, but prescribed Nuerontin and Soma rather than the various pain medications Harp had previously been prescribed. *Id.* at ¶ 9. Likewise, the record shows that Dr. Regier addressed Harp's medical needs by prescribing pain medications that were "as effective but less addictive than the narcotics sought by . . . Harp." Docket 61-2 at ¶ 9. Furthermore, Dr. Regier ordered consults with specialists when necessary. *Id.* at ¶ 12. In arriving at these determinations, both physicians exercised independent medical judgment and took into

consideration Harp's medical history, past narcotic use, and current circumstances. Docket 61-1 at ¶¶ 5–6; Docket 61-2 at ¶¶ 6–7.

It appears, therefore, that Drs. Wallinga and Regier did not act with deliberate indifference toward Harp's medical needs. To the contrary, both doctors addressed Harp's medical needs by prescribing appropriate pain medications and referring Harp to specialists when necessary. Harp merely disagrees with each doctor's course of treatment. Because " 'a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation,' " *Nelson*, 603 F.3d at 449 (citation omitted), the court finds that Drs. Wallinga and Regier have not violated Harp's constitutional rights. Drs. Wallinga and Regier are therefore entitled to summary judgment on Harp's deliberate indifference claim on the basis of qualified immunity.

### 2. Unit Manager Ditmanson did not act with deliberate indifference toward Harp's serious medical needs.

Unit Manager Ditmanson concedes that he denied Harp diabetic socks. Docket 61-3 at ¶ 7. Such refusal, however, was in accordance with SDSP policy, which prohibits officials from giving inmates certain items without a medical order on file. *Id.* at ¶ 6. Because Harp's file did not contain a medical order requiring the issuance of diabetic socks, Ditmanson refused Harp's request for diabetic socks. *Id.* at ¶ 7. Moreover, Ditmanson "contacted Health

Services regarding Inmate Harp's request" and "was informed that the socks were not necessary." *Id.* at ¶ 8.

Beyond mere assertions, Harp has not provided evidence to refute the aforementioned facts. The court therefore cannot conclude that Unit Manager Ditmanson acted with deliberate indifference toward Harp's serious medical needs. The record demonstrates that Ditmanson acted in accordance with SDSP policy in refusing to issue medical provisions to Harp. But Ditmanson did not stop there; once aware of Harp's alleged medical needs, he acted on such knowledge by seeking the advice of medical professionals at Health Services. Since the conduct of Ditmanson would fail to satisfy even the negligence standard, the conduct does not rise to the level of deliberate indifference. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). Therefore, Unit Manager Ditmanson is entitled to summary judgment as a matter of law.

>   **3.   The Secretary of Corrections, Warden Dooley, and Warden Weber did not act with deliberate indifference toward Harp's serious medical needs.**

The Secretary of Corrections, Warden Dooley, and Warden Weber each assert that they were not personally involved in the alleged violation of Harp's constitutional rights. Docket 61 at 8–10. With regard to the Secretary of Corrections and Warden Dooley, both of whom Harp accused of "creating policy

16

and procedure that interferes with and denies needed medications and medical treatment," defendants note that Harp has not specifically alleged facts suggesting that either defendant was personally involved in the alleged deprivation of treatment. Docket 36 at 4; Docket 61 at 9–10. With respect to Warden Weber, who Harp alleges "authorized th[e] denial [of diabetic socks] pursuant to an Operations Memorandum," defendant notes that Harp has neither produced a copy of the alleged memorandum nor specifically alleged that defendant was otherwise personally involved in the alleged deprivation. Docket 36 at 4; Docket 61 at 8–9.

The Eighth Circuit has repeatedly held that " '[r]espondeat superior is not a basis for liability under 42 U.S.C. § 1983.' " *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994) (quoting *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)). In other words, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability" for an alleged constitutional violation. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Here, the Secretary of Corrections, Warden Dooley, and Warden Weber had no personal involvement in the treatment decisions made by medical professionals at either MDSP or SDSP. None of the three defendants, therefore, can be held liable for the treatment decisions, even despite their general responsibility for supervising prison operations.

Notably, prison officials "can be held liable for policy decisions which create unconstitutional conditions." *Martin v. Sargent*, 780 F.2d 1334, 1338

17

(8th Cir. 1985) (citing *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir. 1983)). The court, however, has already determined that neither the denial of specific prescription medications nor the refusal of diabetic socks rose to the level of a constitutional violation. Accordingly, even if the Secretary of Corrections, Warden Dooley, and Warden Weber are responsible for the policies that led to the denial of certain prescription medications and diabetic socks, defendants are not liable under § 1983 because those alleged deprivations are not unconstitutional. The Secretary of Corrections, Warden Dooley, and Warden Weber are therefore entitled to summary judgment as a matter of law.

> 4.  **The South Dakota Medical Department Staff did not act with deliberate indifference toward Harp's serious medical needs.**

Defendants assert that Harp "has failed to allege their personal involvement in the alleged deprivation of his constitutional rights" and contend that the South Dakota Medical Department Staff, therefore, cannot be found to have acted with the requisite deliberate indifference. The record supports defendants' assertion—Harp has not set forth specific facts sufficient to raise a genuine issue as to whether any particular staff member was personally involved in providing Harp inadequate medical care. *See Barge*, 87 F.3d at 260 (noting that the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

Furthermore, Harp has not alleged that the medical staff refused him care. Rather, Harp alleges that the medical staff failed to prescribe him medication to which Harp believed he was entitled. Docket 36 at 4. At the very least, this information evidences a disagreement over a course of medical treatment, and at most, the information supports a finding of negligence. In either case, Harp's allegations do not support a finding of deliberate indifference. *See Estate of Rosenberg*, 56 F.3d at 37 ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). Therefore, the South Dakota Medical Department Staff is entitled to summary judgment as a matter of law.

## CONCLUSION

Because sovereign immunity protects state officials from being sued in connection with actions taken in their official capacity, defendants are entitled to summary judgment on the official capacity claims. With regard to Harp's claim that defendants, in their individual capacities, acted with deliberate indifference toward his serious medical needs, the court finds that defendants are protected from liability under the doctrine of qualified immunity. Consequently, defendants are entitled to summary judgment on the remaining individual capacity claims.

Accordingly, it is

19

ORDERED that defendants' motion for summary judgment (Docket 60) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for appointment of counsel (Docket 51) is denied as moot.

IT IS FURTHER ORDERED that defendants' motion for protective order (Docket 57) is denied as moot.

Dated May 6, 2013.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE